**PETER SALPETER ENERGY COMPANY, INC., Appellant,**

v.

**CRYSTAL OIL COMPANY, d/b/a Crystal Oil and Land Company, Appellee.**

No. 948.

Court of Civil Appeals of Texas, Corpus Christi.

May 22, 1975.

Rehearing Denied June 19, 1975.

William R. Anderson, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellant.

William H. Keys, Keys, Russell, Watson & Seaman, Corpus Christi, Claude C. Roberts, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

## OPINION

NYE, Chief Justice.

This is a conversion case with the amount of damages being the only question before us. Crystal Oil Company instituted suit against Peter Salpeter Energy Company, Inc. to enjoin them from removing or disposing of Crystal's oil well equipment located on a non-productive lease, and for the recovery of the reasonable market value of said equipment. A trial was had on the merits before the court without the aid of a jury. The trial court found that Crystal Oil Company had not abandoned its oil well equipment and that Crystal should recover against Salpeter the sum of $39,176.00 for the conversion of the equipment. Peter Salpeter Energy Company has perfected its appeal to this Court.

Mr. B. W. Cox owned a certain tract of land near Mathis, San Patricio County, Texas, which he leased to J. W. Corman on June 17, 1946. Later, by various assignments, Crystal became the owner of the lease in question which it held until September, 1973, when production stopped. Crystal left 11 wells on the Cox lease unplugged, together with the equipment, including all the casing and tubing, on the lease. The lease was terminated in accordance with the terms of the lease.

On April 30, 1974, Cox executed a new oil and gas lease in favor of the appellant Peter Salpeter Energy Company, Inc. on the subject property. Cox assigned to the appellant his interest, "if any", in all the equipment located in the wells and on the surface. The appellant began using the equipment and during the course of its operations removed approximately 1,200 feet of casing and 3,000 feet of tubing from two of the wells.

Crystal then filed suit against appellant and B. W. Cox, seeking to enjoin them from further removing, disposing of or using the oil well equipment belonging to Crystal and for damages covering the reasonable market value of the part of said oil and gas well equipment already converted and disposed of. Crystal obtained judgment against the appellant in which the trial court made specific findings: that Crystal was in fact the owner of certain personal property, including fixtures and equipment located on said lease (San Patricio County); that Crystal had not abandoned or in any way relinquished its right and title to and ownership of said equipment; that the appellant had wrongfully and without right pulled and removed part of the casing and tubing and sold the same; that the appellant had converted all of said equipment belonging to Crystal to its own use and benefit; that some items and equipment which have not been removed by the appellant cannot now

be removed from said wells without destruction of the well bores and without possible waste of the natural resources; that the fair market value of said equipment, including the casing and tubing removed, in the Alice, Texas area (Jim Wells County) is the sum of $59,176.00; and that the reasonable cost of drawing and removing the casing and tubing in said wells and transporting said equipment to or near Alice, Texas, is the sum of $20,000.00, resulting in finding that the fair market value of said equipment in place is the sum of $39,176.00, which sum Crystal is entitled to have and recover from the appellant.

■ Under ordinary circumstances, compensatory damages for a conversion are represented by the reasonable market value of the property at the place and time of conversion. (In this case, the place was San Patricio County, Texas). Reef v. Hamblen, 47 S.W.2d 375 (Tex.Civ.App.—Dallas 1932, writ ref'd); DeShazo v. Wool Growers Central Storage Co., 139 Tex. 143, 162 S.W.2d 401 (1942); 17 Tex.Jur.2d, Damages §§ 234–236; 14 Tex.Jur.2d, Conversion § 26 (1960). There are, however, some exceptions to the above rule. One exception is that, where there is no market for the goods at the place of conversion, the measure of damages is the value of the property at the time of conversion at the nearest and most available place at which there is a market value, less the necessary costs of transportation thereto. Graves v. Trevino, 386 S.W.2d 831 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.); O'Donell v. Preston, 301 S.W.2d 288 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.); Myatt v. Elliott, 143 S.W.2d 205 (Tex.Civ.App.—Galveston 1940, writ dism'd judgm. cor.); 14 Tex.Jur.2d, Conversion § 26, p. 30. If such exception does exist, Crystal had the burden of proving the value of the goods at the nearest place where such goods could be bought and sold on the market and by proving and subtracting the cost of transportation to such point. See Graves v. Trevino, supra.

Appellant in perfecting its appeal to this Court raises only one question (in two points of error) that is as to the amount and proof of damages which have been awarded to Crystal by the judgment entered by the trial court. There is no complaint of the trial court's general or specific findings of fact.

■ Appellant's first point of error is that judgment should not have been entered for money damages since Crystal failed to prove the value of the oil field equipment in San Patricio County, Texas. This general contention is based on the alleged failure of plaintiff to sustain its burden of proving the fair market value of the equipment converted by appellant in San Patricio County and the action of the trial court in entering judgment for plaintiff. Such an attack necessarily constitutes in effect a "no evidence" point of error as opposed to a factually "insufficient evidence" point. See Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc., 456 S.W.2d 724 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e., 462 S.W.2d 276, Tex.Sup.1970). Under a "no evidence" point, it is our duty to view the evidence and the reasonable inferences therefrom most favorably in support of the trial court's judgment and its findings in support of the judgment, disregarding all evidence and inferences to the contrary. Biggers v. Continental Bus System, 303 S.W.2d 359 (Tex.Sup.1957); Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

Viewing the evidence in light of the rule herein set out, we find that the equipment in question was all located on the subject lease near Mathis, Texas, in San Patricio County. This was the county in which Crystal had the burden of proving market value unless some exception to that measure existed. Crystal's principal witness was Fred T. Richards, employed as Production Superintendent for Crystal. The evidence showed that Richards was experienced in buying and selling used oil well drilling

equipment in the South Texas area and was qualified as an expert and capable of giving his opinion as to the market value.

In connection with all of the equipment in question (including the casing and tubing which will be considered separately), Richards testified as to his opinion of market value in reference to all of the equipment located on the lease in question. He gave testimony as to the reasonable fair cash market value of each piece of equipment. In each instance, in giving his opinions as to the market value, Richards referred to that equipment on the "B Lease" (which we find was the subject lease and which was indisputably located in San Patricio County). The total value of all of the surface equipment was approximately $22,400.00. We believe such evidence was sufficient to allow the trial court to properly determine damages as it related to this equipment in accordance with the general rule heretofore set out.

We next consider the evidence as to the market value of the tubing and casing. As to the tubing, Richards testified from the well records and from his own personal knowledge that there was approximately 11,564 feet of tubing, owned by Crystal, on the "B Lease" at the time of the conversion. The evidence shows that the tubing had no market value in the well, but that its market value was determined by its value out of the well *at the well site*. As such, the evidence was that the tubing had a market value of anywhere from $1.50 to $3.25 per foot less what it would cost to get it out on the ground and that was approximately 6½ cents per foot. Such evidence was sufficient to enable the court to determine and ascertain its market value in San Patricio County by taking into account its value on the ground ("at the well site") less the cost of removing it. The total market value of the tubing in San Patricio County was approximately $23,128.00.

The casing seems to be the center of most of the controversy according to the argu-ments in appellant's brief. We have already considered the values of the surface equipment and tubing which according to appellee's evidence would be valued at approximately $45,538.00, which was the reasonable market value of the equipment and tubing in place in San Patricio County. This in and of itself would have been sufficient to support the trial court's judgment. However, the trial court in making its award to Crystal, took into consideration the casing. In order for the court to have properly considered it as making up part of the damages, the evidence must have been such that its market value in place in San Patricio County was proved or that the value of the casing was incapable of being ascertained. Richards testified in response to questions concerning the value of the casing in place as follows:

"Q What is the value of the casing in place out there?

A It would depend on how you went about figuring that. I never buy casing in the ground.

Q Does it have a value in the ground?

A *Certainly.*

Q What is that value?

A *I don't know.* Now, I know about how much it costs to plug a well, and then you got to decide whether you want to call that a business expense if the railroad commission requires you to plug the well, or whether you want to call it recovered casing.

Q All the casing in the well?

A Right.

Q Are you testifying to this Court that you don't know the value of the casing in place.

A I am not going to guess at it. It is considerable, but I'm not going to guess.

Q You don't know?

A That's right." (Emphasis supplied).

Richards' testimony was that the casing did have a value in the ground but such value

was unascertainable because Richards did not know how to treat the costs in drawing and plugging the wells. Thus, Crystal must admit that there was evidence of a value to the casing in place in San Patricio County. Richards testified that the market value of the casing in Alice, Texas, (in Jim Wells County) was $7.00 per foot, but there was no evidence from any witness as to what the market value of the casing was in San Patricio County.

 As previously stated, ordinarily, compensatory damages for a conversion are represented by the reasonable market value at the place and time of conversion. Reef v. Hamblen, supra; DeShazo v. Wool Growers Central Storage Co., supra. The place of conversion of the casing in the case at bar was in San Patricio County, Texas. If there was no market for the goods at the place of conversion (San Patricio County), the measure of damages would have been the value of the property at the time of the conversion at the nearest and most available place at which there is a market value, less the necessary cost of transportation thereto. Myatt v. Elliott, supra; Graves v. Trevino, supra. If such exception is to be applicable, it must be clearly shown that the casing has no market value in San Patricio County and that the nearest place at which there was a market value was in Alice, Texas.

The exception to the general rule is inapplicable as to Crystal's situation because Crystal failed to establish that the converted casing on the subject lease (in San Patricio County) had no market value. See English v. Nichols, 142 S.W.2d 534 (Tex. Civ.App.—Austin 1940, no writ); Empire Transfer and Storage Co. v. Simon, 249 S.W. 885 (Tex.Civ.App.—Dallas 1923, no writ). Since the evidence showed that the casing did have a market value in San Patricio County, Crystal had the burden of establishing the reasonable market value of such casing in San Patricio County, Texas, which it failed to do.

The trial court in its judgment attempted to follow the general rule as well as the exception and concluded that all of the equipment had a fair market value in Alice, Texas, and the South Texas area in the amount of $59,176.00, and that by deducting the expenses including transportation in the sum of $20,000.00 that the fair market value of all of the equipment (including the casing) was $39,176.00. Such method of calculation was improper. For the error committed, the entire case must be reversed and the cause remanded for a new trial.

Reversed and remanded.